UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JOHN REDNER,

                                Plaintiffs,

          -against-

THE CITY OF MIDDLETOWN (MIDDLETOWN); THE
MIDDLETOWN POLICE DEPARTMENT (MPD);
individually and in their official capacity as Police Officers,
JOHN DOE Police Officer,
                             Defendants,
-----------------------------------------------------------------------X

**COMPLAINT AND JURY DEMAND**

**19-cv-7605**

Plaintiff JOHN REDNER, by and through his attorney, Martin Kanfer, Esq. state
as follows:

## **INTRODUCTION**

1.     This action arises from another shameful, vicious, and cruel act of police brutality and
abuse in the history of THE CITY OF MIDDLETOWN.

2.     It seeks compensation for the unconstitutional and disgraceful conduct of police officers
who abused and arrested JOHN REDNER, police officers who witnessed or were aware
of these events yet failed to report what they knew, thereby creating a "blue wall" of
silence and lies to obstruct justice and prevent the truth from surfacing, and police
supervisors who failed to control subordinates with a history of abusive behavior.
Ultimately, MR. REDNER seeks redress against THE CITY OF MIDDLETOWN for
their deliberate indifference and negligence with respect to customs, policies, and
practices that permitted, condoned, and preserved a "code of silence" environment in
which the most violent police officers believed they would be insulated from swift and

1

effective investigation, prosecution, and conviction for even their most brazen acts of brutality.  The inevitable result of this institutional indifference is the extraordinary injuries inflicted upon MR. REDNER.

3.      During the afternoon of February 22, 2018, JOHN REDNER was involved in a police chase in the City of Middletown when his car crashed. MR. REDNER then surrendered to the police by putting both hands out of the car window which was visible to the police. Police Officers from the MIDDLETOWN POLICE DEPARTMENT immediately pulled him out of the car, sprayed him with mace and proceeded to viciously beat him. MR.REDNER was not resisting or fighting and he was cooperative however the officers proceeded to use excessive and brute physical force to restrain and cuff him. The police officers then placed him in the police car drove him about and them brought him back to the scene of his surrender approximately 7-8 minutes later and he was again brutally beaten by the officers.

MR. REDNER was beaten and abused by the police and then arrested and taken into custody by officers from the MIDDLETOWN POLICE DEPARTMENT.

4.      Ultimate responsibility for the horrific events of February 22, 2018 and their aftermath rests with THE CITY OF MIDDLETOWN, THE MIDDLETOWN POLICE DEPARTMENT and their agents/employees.  MR. REDNER was abused and treated in an inhumane manner.

5.      The policies, customs, and practices of the MPD have promoted an atmosphere in which the very worst police officers feel assured that evidence of misdeeds depriving citizens of

2

their civil rights, no matter how awful, will go unpunished. With the imposition of

punitive damages against all defendants with the exception of the City, plaintiffs hope to

deter defendants and bring an end to this intolerable cycle of violence.

## JURISDICTION

6.    This action is brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988;

and the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United

States Constitution and the laws of the State of New York.  Jurisdiction is founded

upon 28 U.S. C. §§ 1331, 1343(1-4), and 2202.  Plaintiffs further invoke the

supplemental jurisdiction of this Court to adjudicate pendant state law claims

pursuant to 28 U.S.C. § 1367.

7.    Venue is proper in this district under 28 U.S.C. § 1391(b).

## PARTIES

8.    Plaintiff JOHN REDNER is a resident of the State of New York.

9.    Defendant, THE CITY OF MIDDLETOWN (MIDDLETOWN) is a municipal

corporation within the State of New York and the public employer of the police officers

named as defendants in this action.

10.    Defendant, THE MIDDLETOWN POLICE DEPARTMENT (MPD), is an agency of

THE CITY OF MIDDLETOWN, existing and operating by virtue of the laws of the State

of New York and the City of New York.

11.    In addition to the facts alleged in the following subparagraphs, the following defendants

are all sued in their individual and official capacities and all acted within the scope of

3

their employment and under color of state law, to wit, under color of the statutes,

ordinances, regulations, policies, customs and usages of the State of New York and/or the

City of New York:

11.a    Defendant JOHN DOE, Police Officers, at all relevant times, were a police

officers of  defendant Police Department;

## NOTICE OF CLAIM

12.     Plaintiffs, in furtherance of their state causes of action, filed timely notice of claim

against MIDDLETOWN in compliance with General Municipal Law Section 50.

13.     More than 30 days have elapsed since service of said notice and MIDDLETOWN has

failed to pay or adjust the claim.

14.     MIDDLETOWN has not held a 50-h examination of plaintiffs in advance of commencing

this lawsuit.

## FACTUAL AND GENERAL ALLEGATIONS

15.     During the early morning hours of February 22, 2018, JOHN REDNER was involved in a

police chase in the City of Middletown when his car crashed and he surrendered to the

police. MR. REDNER, without legal cause, he was assaulted and abused by one or more

police officers.  MR. REDNER had not resisted arrest and was not combative.

16.     The force used was unnecessary, unreasonable, and excessive.

17.     At no time during the events described above did the defendant officers have reason to

abuse and injure MR. REDNER and no legal cause or excuse for his injuries.

18.     The actions of all individual defendants were performed within the scope of their

employment and authority, and for whose acts the defendants MIDDLETOWN are liable under the doctrine of respondeat superior.

19.     The actions of the defendant officers violated MR. REDNER's clearly established rights under the First, Fourth, Fifth, Eighth, Thirteenth and Fourteenth Amendments of the Constitution and were the direct and proximate cause of the physical and  psychological injuries he suffered.

20.     The actions of all defendants were intentional, malicious, and in bad faith, thus giving rise to punitive damages as to all defendants with the exception of the municipality.

## DAMAGES

21.     As a direct and proximate result of the said acts of the defendants, MR. REDNER suffered the following injuries and damages:

a.      Violation of his rights under the First, Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendments to the Constitution;

b.      Loss of physical liberty;

c.      Physical injuries including but not limited to Right knee chondromalacia patella Patellar fracture, Pain to right shoulder due to use of force, Bipartite patella or patellar fracture, Right knee injury and left rib injury fractured rib, broken and missing tooth, pain and suffering, extreme fear, emotional trauma, requiring the expenditure of money for treatment expected to last the rest of his life;

d.      Economic damages including loss of income; and

e.      Humiliation, embarrassment, and injury to reputation.

The physical, psychological, and economic consequences of the defendants' actions continue to date, and upon information and belief, will continue into the future.

5

## CAUSES OF ACTION:

### COUNT I
### 42 U.S.C. § 1983 CONSPIRACY

22.    Paragraphs 1-23 are incorporated by reference as though fully set forth.

23.    The individual defendants, under color of law, conspired with each other, and with others,

reached a mutual understanding, and acted to undertake a course of conduct to injure,

oppress, threaten, and intimidate JOHN REDNER in the free exercise and enjoyment of

the rights and privileges and equal protection of the law secured to him by the

Constitution, including the rights: to be free from the intentional use of unreasonable

force; to be free from unreasonable searches and seizures; to associate and speak freely;

to have access to and seek redress in the courts; and to be free from false arrest, false

imprisonment, and the delay and denial of medical attention.

24.    It was part of the conspiracy that the defendants did, among other acts, physically assault

MR. REDNER.

25.    In furtherance of the conspiracy and to cover up the acts of brutality, defendants engaged

in the following:

      a.      Abused, arrested and imprisoned MR. REDNER;

      b.      Fabricated and contrived the criminal charges lodged against MR. REDNER;

### COUNT II
### 42 U.S.C. § 1983 - UNREASONABLE AND EXCESSIVE FORCE

26.    Paragraphs 1-27 are incorporated by reference as though fully set forth.

27.    By their conduct, defendants, under color of law, deprived MR. REDNER of his

constitutional right to be free from excessive and unreasonable force.

6

28.    MR. REDNER claims damages for the injuries set forth above

## COUNT III
### 42 U.S.C. § 1983 - FAILURE TO INTERCEDE

29.    Paragraphs 1-28 are incorporated by reference as though fully set forth.

30.    By their conduct and under color of state law, it is believed defendants officers each had

opportunities to intercede on behalf of MR.REDNER to prevent the excessive use of

force but due to their intentional conduct or deliberate indifference declined or refused to

do so.

31.    As a direct and proximate result, MR. REDNER suffered the injuries and damages

described above.

## COUNT IV
### 42 U.S.C. §§ 1981, 1983 - FIRST, FOURTH, AND FOURTEENTH AMENDMENT VIOLATIONS

32.    Paragraphs 1-31 are incorporated by reference as though fully set forth.

33.    By their conduct and under color of law all individual and officers, deprived

MR.REDNER of his First Amendment right to have access to and seek redress in the

courts.

34.    The defendants engaged in a cover up in order to conceal the wrongful and unlawful

conduct taken against MR. REDNER.

35.    The defendants' efforts to conceal the truth continue to the detriment of MR. REDNER.

36.    As a direct and proximate result, MR. REDNER suffered the injuries and damages

described above.

## COUNT V
## 42 U.S.C. § 1986 ACTION FOR NEGLECT TO PREVENT

37. Paragraphs 1-36 are incorporated by reference as though fully set forth.

38. On information and belief, the individual named defendants, JOHN DOE, Police Officers, had knowledge that a cover-up and 42 U.S.C. 1985(3) conspiracies to cover up the brutality perpetrated against MR. REDNER were in progress, had the power to prevent or aid in preventing the cover-up and conspiracy from continuing, and neglected or refused to do so.

39. With reasonable diligence, defendants could have promptly reported the brutality to superiors.  Their failure contributed to MR. REDNER's remaining under arrest, guarded, and handcuffed throughout, thereby exacerbating his pain and suffering and depriving him of access to the courts.

## COUNT VI
## 42 U.S.C. § 1983 SUPERVISORY LIABILITY

40. Paragraphs 1-39 are incorporated by reference as though fully set forth.

41. Defendant at all times employed, at the relevant times, supervisory personnel in the MPD, with oversight responsibility for line officers. They were responsible for training, instruction, supervision, and discipline of the officers who brutalized MR. REDNER.

42. It is believed that defendants supervisory personnel received complaints about the conduct of line officers, and other officers in the MPD, knew about past complaints, aberrant behavior, and disciplinary infractions, or, in the exercise of due diligence,

8

would have perceived that these officers had conduct and disciplinary problems that posed a pervasive and unreasonable risk of harm to MR.REDNER.

43.     Defendants supervisors knew, or in the exercise of due diligence would have known that the conduct of line officers JOHN DOE, Police Officers, displayed toward MR.REDNER was likely to occur.

44.     It is believed defendants supervisors failed to take preventative and remedial measures to guard against the brutality and cover up committed by line officers JOHN DOE, Police Officers.  Had they taken appropriate action, MR. REDNER would not have been injured.

45.     The failure of defendant's employees to supervise and discipline line officers JOHN DOE, Police Officers and the other officers of the MPD,  amounted to gross negligence, deliberate indifference, or intentional misconduct which directly caused the deprivations suffered by MR. REDNER.

## COUNT VII
### 42 U.S.C. § 1983 - MONELL CLAIM

46.     Paragraphs 1-45 are incorporated by reference as though fully set forth.

47.     Prior to February 22, 2018, MIDDLETOWN developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of MR. REDNER's rights.

48.     It was the policy and/or custom of MIDDLETOWN to investigate inadequately and improperly civilian complaints of police misconduct.  Instead, acts of brutality were

tolerated by MIDDLETOWN. MIDDLETOWN has, deliberate, and discipline

transgressors. The MPD dismissed only one officer as MIDDLETOWN investigations of

brutality rarely lead to administrative trials and when they do, and the charges are

somehow sustained, the punishment is minimal, lacking any deterrent effect. Since there

is no disciplinary sanction available between thirty days' suspension and dismissal, and

dismissal is almost always deemed too harsh, even the most brazen acts of brutality, short

of murder, are resolved with a slap on the wrist.

49.    MIDDLETOWN has been on notice for more than a generation that brutality is

widespread and that particular reforms need to be implemented.  MIDDLETOWN has

been repeatedly cautioned that a systemic tolerance for brutality flourishes throughout the

MPD.

50.    It was the policy and/or custom to supervise and discipline officers inadequately,

including the defendant officers, thereby failing to discourage constitutional violations on

the part of its police officers.

51.    It was and is the policy of MIDDLETOWN to give police officers suspected of criminally

assaulting a civilian a special break -- the "48 hour rule."  In the last twenty years,

hundreds of civilians have been fatally wounded by police action but only four police

officers have been convicted for on duty killings since 1977.  The police indicted for

serious brutality are a precious few; those convicted can be counted on one's hands.

52.    The "48 hour rule" delays questioning of police suspects for two business days, a

privilege that no other criminal suspect in New York enjoys and that no other police

suspect in any other major city in the nation can hide behind.  Moreover, it requires that

when the target officer is notified, a PBA representative must be present.  The PBA

representatives, who are almost always members of the MPD,  hear confessions and

admissions of brutality, and then conceal them from the Department, a practice condoned

by the Department even though the rules and regulations of the MPD explicitly prohibit

it.  Additionally, on information and belief, the PBA representatives utilize the 48 hours

to assist target officers in conspiring to cover up their crimes and misconduct and thus

avoid detection and punishment.

53.     Although the "48 hour rule" is supposed to apply only to administrative investigations, it

is MIDDLETOWN's custom to apply it to criminal investigations as well. Moreover, the

48 hour delay is expressly limited to targets; mere witnesses are to be accorded a four-

hour grace period.  The custom, however, is to allow the PBA representative instead of

the IAB to decide who is a target and who is a witness.  In this case, it is believed the

PBA representatives invoked the "48 rule" for everyone who was present when MR.

REDNER was tortured.

54.     Police officers of THE CITY OF MIDDLETOWN have for years engaged in a pattern

and practice of actively and passively covering up the misconduct of fellow officers by

failing to come forward or failing to accurately give evidence as to misconduct of which

they are aware, thereby establishing and perpetuating a "code of silence."

55.     This "code of silence" is a custom deeply ingrained in the members of MIDDLETOWN

POLICE DEPARTMENT so as to constitute the actual policy of THE CITY OF

MIDDLETOWN.

56.     MIDDLETOWN has been deliberately indifferent to the need for more or different

training, rules and regulations relating to police officers who witness or have information regarding misconduct by fellow officers. MIDDLETOWN has failed to properly sanction or discipline officers who are aware of and subsequently conceal and/or aid and abet violations of constitutional rights of citizens by other New York City police officers, thereby causing and encouraging New York City police officers, including the individual defendant officers in this case, to violate the rights of citizens such as MR. REDNER.

57. It is believed MIDDLETOWN has maintained no system or an inadequate system of review of officers who withhold knowledge or give false information regarding misconduct by fellow officers. This failure to identify and track such officers, including the defendant officers, or to discipline, more closely supervise, or retrain such officers who engage in the "code of silence," causes police officers to believe that they can engage in misconduct, secure in the knowledge that their fellow officers will neither intervene, nor give evidence against them. These systemic deficiencies include, but are not limited to:

   a.   Preparation of investigative reports designed to vindicate the conduct of officers who gave false information about the misconduct of other officers and who falsely denied knowledge about misconduct which they were in a position to observe.

   b.   Preparation of investigative reports which uncritically rely solely on the word of police officers and which systematically fail to credit testimony of non-police witnesses.

12

c.     Preparation of investigative reports which omit or ignore factual information and physical evidence which contradict the accounts of police officers;

d.     Issuance of public statements exonerating officers involved in such incidents prior to the completion of investigation.

e.     Failure to have meaningful review of investigative reports by responsible superior officers for accuracy or completeness, including consideration of the conduct of officers who were not actively engaged in the misconduct which was the subject of the investigation, and acceptance of conclusions which are not supported by the evidence or which contradict such evidence; and

f.     Failure to identify potential "code of silence" violations and maintain accurate records of allegations of such misconduct.

58.    MIDDLETOWN, prior to and at the time of this incident, was aware of the need for more or different training, rules, regulations, investigation and discipline relating to police officers who practice the "code of silence," and was deliberately indifferent to that need.

59.    The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger of harm to citizens like plaintiff and the need for more or different training and discipline are policies, practices and customs of THE CITY OF MIDDLETOWN  and have caused police officers, including the officer defendants in this case, to believe that they can violate the rights of citizens with impunity, and that their fellow officers would

conceal such conduct, including swearing falsely and committing perjury, all with the foreseeable result that officers are more likely violate the constitutional rights of citizens.

60.     As a direct and proximate result of MIDDLETOWN's deliberate indifference, defendants violated MR. REDNER's constitutional rights for which he suffered substantial damages.

## COUNT VIII
## PENDENT CLAIM OF ASSAULT AND BATTERY

61.     Paragraphs 1-60 are incorporated by reference as though fully set forth.

62.     By their actions, as set forth above, defendants committed atrocious acts of battery against JOHN REDNER which included brutalizing him without cause.  This use of physical force against MR. REDNER was unnecessary and excessive.

63.     MIDDLETOWN is responsible for the threats and the excessive and unnecessary physical force used by defendants because it occurred while they were acting in the scope of their employment, specifically in the course of arresting MR. REDNER and while they were executing their responsibility to hold safely him in police custody.

64.     As a result of these physical threats and the excessive and unnecessary physical force used against him, MR. REDNER suffered severe and serious physical and mental injuries.

## COUNT IX
## PENDENT CLAIM OF PRIMA FACIE TORT

65.     Paragraphs 1-64 are incorporated by reference as though fully set forth.

66.     By their actions, as set forth above, defendants JOHN DOE, Police Officers, inflicted harm upon MR. REDNER, without excuse or justification, out of disinterested

14

malevolence.

## COUNT X
## PENDENT CLAIM - RESPONDEAT SUPERIOR

67.     Paragraphs 1-66 are incorporated by reference as though fully set forth.

68.     At all relevant times, all defendant employees of THE CITY OF MIDDLETOWN were

         acting for, upon, and in furtherance of the business of their employer and within the scope

         of their employment.

69.     Consequently, MIDDLETOWN is liable under the doctrine of respondeat superior for

         their tortious actions.

70.     That by reason of the foregoing, plaintiff has been damaged in an amount which exceeds

         the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

71.     That as a result of the defendants negligence as aforesaid, this plaintiff, JOHN REDNER,

         has been damaged an amount which exceeds the jurisdictional limit of all lower courts

         which would otherwise have jurisdiction.

**WHEREFORE**, plaintiffs request the following relief jointly and severally as against all

of the defendants:

    1.  Award compensatory damages in an amount to be determined at trial;

    2.  Award punitive damages in an amount to be determined at trial;

    3.  Disbursements, costs, and attorneys' fees; and

    4.  For such other and further relief as to this Court may seem just and proper

### PLAINTIFFS DEMAND TRIAL BY JURY

Dated:   Great Neck, New York
         August 14, 2019

                                        Respectfully submitted,

                                        _____

                                         MARTIN KANFER 1895
                                        3 NORTHERN BLVD
                                        GREAT NECK, NY 11021
                                        516 482 6293